Next case, Blue Ridge v. The Compensation Commission, No. 5090306. What are you doing here? You, first time we've seen you. I know that you like to sometimes yell at people, and I apologize for that. I'm just interested to read. I haven't seen you for a long time. I think I was here in January, February. Good morning. May it please the Court. Kevin Hastliff for the respondent. I'd like to stress two or three points that we have already laid out in our brief. The first one would address the histories and the mechanism of the accident as given by the petitioner. I think we all can agree that what happened at the arbitration as far as what he described, being knocked down and dragged 140 feet, is completely inconsistent with the numerous histories he gave to medical providers and even in the accident report that he filled out. So here's the brief for you, and not to chastise you, but your brief in some respects seems to be problematic. On two out of the four issues, you have arguments unsupported by any citations or any authority. And the remaining two issues, you group them together and contain citations to two cases that are only tangentially relevant to the issues, and you fail to set forth even the basic principles of law or the applicable standards of review applicable to the issues raised. Do you run out of time with regard to particular issues three and four? There's no citations to anything in the record. Well, it's our position with regard to number three, whether it's the title of the TTD, it's sort of just a question of fact. For the periods of time the arbitrator awarded nine weeks or so, the commission reduced it to six weeks or so. There really isn't any law to support the question of fact. Our argument is the facts don't support the award. And with regard to Dr. Park, again, it's a question of fact. He was the eighth physician chosen by the petitioner to be involved in this case, and the circumstances of his involvement, he was brought in at the time that the application was filed in January 2006, but it's just a question of fact as far as credibility. I mean, there really isn't any other way to argue it with case law. I mean, the facts either support it or they don't support it. Like you say, usually your work is very thorough and you're very experienced. I was just a little bit surprised that it was that brief. It's just I unfortunately, and I'm not going to harp at all on it, but I didn't try the case and I would have raised a couple of issues at the time of arbitration on the stiff sheet and obviously would have also included that in the petition for review, but that wasn't my choice. But these issues are really just secondary to the primary issues. But this is, in essence, a credibility case. We have a very strong dissent, I think, from the commissioner, and as we pointed out in the brief, there doesn't see any dispute about why he would change his history as far as the accident at the time of arbitration. The arbitrator really just lightly gossed over that and there was a comment about while the arbitrator stated, while I do note inconsistencies on these issues, review of the evidence as a whole does support the fact that the petitioner was injured at work on 6-1703 as a result of the machinery malfunction he described. It's never been in dispute. We accepted this accident. We paid all the medical benefits for this claim through January 2004. It's never been in dispute. What's in dispute is why in the world did he come in and give that history and testify under oath that way when he knows full well all the histories that he gave all the doctors over several years is completely different from that. And the reason it's important, as pointed out by the dissent, is it goes to credibility. If he's going to give inconsistent, inaccurate information, then it goes to whether he's a credible person. The next point about that is he gets up and he testifies that he does certain things because the employer denied liability for medical treatment at a point in time that he's talking about in December of 2003 and January of 2004. It's simply not true. We paid it. Dr. Thorpe's records flat out indicate that. And the only thing we denied was at some point in there he went in there complaining of problems with his hips, and we said we're not paying for the hips. That was covered under health insurance. Nothing was denied as far as his back or his neck was concerned between June of 2003 and January of 2004. Why would he get up there and testify that, well, I did that because they were denying me treatment? No. Then he says, well, I didn't have the injections because they denied those injections. Dr. Thorpe's records clearly establish that's false testimony because he had two injections. The only reason he stopped, we really don't know why he stopped going to Dr. Thorpe in January of 2004, but he did it on his own volition. And then there's a year goes by without any treatment for his low back for this June of 2003 accident. He goes to Benton Family Medical Center seven times in 2004, and those records indicate, for everything but his back. The next time he sees a doctor for his back, he does it twice in November of 2004. Once he's lifting his son, he goes to the emergency room. That's paid by health insurance. Of course it's going to be paid by health insurance. Later on, he goes to the emergency room again because he lifted a 50-pound battery on November 28, 2004. That's handled by health insurance. That's not going in for treatment for his low back for a June of 2003 accident. January of 2005, he lifts a TV at Walmart, injures his back, goes to the emergency room again. Again, that's all covered by health insurance. Now, is it also your position that these other incidences broke the chain of causation? Is that part of what you're arguing here? It is. Is there any medical opinion or evidence in the record to substantiate that argument? I would say no. I think it's a factual question. The arbitrator characterized it well. Any kind of thing that he did is an aggravation of this. How do we reach that point? How does anything in the future, after you have a mild back strain, then comes to the point of anything that happens to your low back in the future now is an aggravation of that? He went a year, 10 months, without any treatment to his back whatsoever. He saw doctors at Benton Medical Clinic seven times for completely unrelated conditions. And then he injures his back lifting his son. He injures his back lifting a battery. And the arbitrator terms it as well. We're just going to categorize that as just an aggravation of this prior problem. I would submit it's, can you get a doctor to say, no, it's not an aggravation of that? Could you get one to say, yes it is? But it really is, I don't think we really need to go get medical expert testimony on something like that. What does Lang say in his subsequent correspondence when he was asked directly whether the current condition related to his June 23 accident were? What was his response? His response was, as far as these three, he thought they were all kind of just part and parcel of the same thing. It's three incidents where, you know, he had an incident of some type. It was significant enough for him to go to the emergency room on. But he didn't think he had a significant condition in the first place. And his very thoughtful, I think, and very upfront opinion was, I don't really think these add much to the equation at all. And I see a lot in that. I mean, it's, so I guess maybe I hesitated a little bit when I said, do I really think these are subsequent intervening accidents? Probably so. Do they reach the level of breaking a chain? Maybe, maybe not. But the point is, they're there. The point is, that's why he went for medical treatment. The problem is, he doesn't give these histories of these incidents to the subsequent doctors when he starts treating with them in 2005. But he doesn't have a surgical condition. He has a situation where he's got a bad back. During all this time, except for a few weeks in March and April of 05, he's working at his regular job. The arbitrator's decision with regard to Dr. Park and the need for surgery and so forth, Dr. Park saw him in January of 06, during the same month that he files the application for adjustment of claim. He's already seen Dr. Thorpe, who's a back surgeon. He's already seen Dr. Sani, who's a neurosurgeon that does back. Why is he now to another doctor in Cape Girardeau for another opinion on something like this? You have to keep in mind, all of the medical treatment through January of 05 has been paid, excuse me, January of 04 has been paid by work time. There is no treatment really in 04. The three visits to the emergency room has all been paid by health insurance. As we've asked for the AHA credit, all the treatment in early 2005 is all handled by health insurance. There is no application for adjustment of claim on 05. There really isn't any dispute at the time. Everything is just being handled. So there isn't any claim for TTD benefits. There isn't any claim for any medical benefits that haven't been paid. He just wants them to be paid under work time versus under health insurance. So then we really get to the crux of the problem, which is Dr. Park. And again, I may have handled it differently at the time of arbitration, but what does it mean when he gets to his eighth doctor, his third back surgeon, and he goes in and he tells him this. He doesn't review any medical records. He doesn't look at anything else. In a cross-examination, Dr. Park testified the MRI and the myelogram did not reveal herniated disc in the lumbar spine. He admitted Petitioner had pre-existing conditions in the cervical and lumbar spine prior to June of 2003. He admitted that his opinion on causation was entirely based on the history given to him by Petitioner. Petitioner did not tell him about having similar problems in the past. He stated that this type of degenerative condition can have symptoms that wax and wane. He admitted that Petitioner had similar complaints prior to this injury that might change his opinion on causation. He admitted he had not reviewed the prior medical records and admitted that the records show in October of 2002 and March of 2003 and May of 1903, Petitioner had similar back complaints. Dr. Park admitted Petitioner failed to inform him of injuring his back on January 30, 2005, lifting the TV and the other two incidents. He admitted that in July of 2005, note of Dr. Kahn that indicated Petitioner's onset was February of 2004, which obviously is different than June of 2003. He admitted that history was not consistent with the history given to him by Petitioner. You're doing a good job of making arguments that arguably undermine the credibility of the opinion, but obviously the Commission chose to believe it. In the absence of any contrary medical opinion, how do we find that an opposite conclusion is clearly apparent? Because that's the hurdle you have to overcome. Well, the hurdle is we have the opinion that surgery is not necessary. Dr. Park said when I saw him on that one time, based on what he told me and what I saw in the film, you know, let's do surgery. Our point is our doctors say no surgery isn't indicated, and our doctors even saw him before Dr. Park. There is nothing. The myelogram, as the exhibit showed, the myelogram is normal. The MRIs are normal. They show some degenerative changes. What happened? Why? And it's very difficult to say what the Commission is thinking because they don't give us any reasons. They just really adopt the arbitrator's decision, and we would, if you look at the arbitrator's decision, it really doesn't address the problem. It's just lightly glossed over. You know, Dr. Park said this, and then there's complete omission of his admissions on cross-exam. I mean, that's, you know, one of the reasons you appeal the decision. Unfortunately, the Commission just doesn't give us any guidance. They just affirm it, and, you know, you go on. We do have a dissent. It's well-reasoned, and it explains, like I've tried to do here, why the majority's decision is wrong, but we do have opinions, medical opinions, that the surgery isn't necessary. It continues to work as a cold line. This has been going on for several years now. We would ask that you reverse the Commission and deny the medical exam. Counsel, please. Good morning, Mr. Justices. This is Brian McGarry on behalf of the petitioner Richard Bowles. Before I start, is there any questions that the court would like me to address? Did he say he had never filed a claim before? Pardon me, Your Honor? Did he testify that he had never filed a claim before? Your Honor, I'm going to plead ignorance on that. I'm not sure that he – I don't know if he specifically said he didn't file a claim before. I know that there was a prior application filed because my office filed that. I know that there was – and it was the wrong date. And I acknowledge, I mean, the court can read the facts for what they are in this case, and needless to say, my client is not the best of historians in describing the accident dates and the specifics of his accident. But I think when you look at the totality of the evidence and the facts of this case and the medical records is that clearly Mr. Bowles is talking about this incident that occurred in June of 2003 where, in fact, the respondent admits that he was injured on that date to such an extent that they had to remove him from the mine on a gurney, put him in an ambulance, and take him to the hospital. There was that form 45 report prepared that shortly thereafter. So clearly we have an incident on that date. We have an incident. And if you look at all the follow-up medical records, they all seem to describe this particular incident. Did he give the exact date, the right date, all the time? No, he didn't. But if you, again, look at the totality of the situation, is that it is the event of June 2003 that he is describing. This was even picked up by the IME physician for the respondent, Dr. Lang. He looked at those and he said clearly he's been looking at the medical records, but all seem to be referring to this particular incident, that particular incident. And as Your Honor pointed out, in Dr. Lang's own opinions, he says that these subsequent three instances were not really important on the overall clinical course. At best, they may have increased his symptoms. But the situation is that this man has had ongoing back problems from this incident. It was a substantial injury, an accident. He's had ongoing medical problems. He's testified that the respondent basically pulled the plug on him on his medical bills. And he said, well, there's been a gap in treatment. Well, I'll tell you what, there's been a gap in treatment the respondent didn't want to pay for. That was a problem. That's what he testified to at trial. And as the record reflects, there's over $20,000 of unpaid medical in this case that was awarded to the petitioner. So I think if you look at the, again, the facts as a whole, I think that the arbitrator was correct, the commission was correct, and Judge Zdetsky was correct. The findings of the arbitration commission are consistent with the evidence. I don't think that the decision is against the manifesto of the evidence, and I think it should be affirmed. What do you think Commissioner Lindsay went wrong? Lindsay's trying to say that it resolved well with Lang, it resolved long ago, and that in January it was over in regard to his low back. Well, I don't know if the medical records really document that, Mr. Justice, because I think that, again, if you look at the situation, is that he is receiving medical treatment to his low back. He is receiving that treatment. Now, there's certain gaps in it, but I think he, again, explained it on arbitration by saying that they wouldn't pay for it. I mean, it's a situation that these guys probably check to check, and they're not going to pay for it, there might be a problem. And I think that, in all due respect, the dissent in this case, again, just chose to, I mean, I don't want to say punish, but look at the inconsistencies and I guess the coal miner vernacular used to describe his injuries to somehow show that this guy didn't get hurt as a result of this accident. But if you look, what do we have as far as other parts of this accident? There's two notes from his family physician, and they primarily address the left shoulder, and there are some complaints that his back was sore after work and there was no coal. But what other accidents do we have? We have nothing really before this. This guy was functional, he was working, and he says he hardly missed any time from work. Most coal miners, I imagine, they wake up one morning, they have a sore back, but this guy did not have any consistent treatment or any pain. You know, you hurt yourself on this day, you file an act report for this day, you had some other problem. Didn't have that. What do we have subsequent to that? We have these three incidents which even the old IME doctor says are not really relevant in the overall presentation. So I think that is important to note, and I think that the dissent really didn't address that issue. Now, they had more bite in that argument. They said, well, look, you know, he filed an actual report or he had something, he got hurt here or hurt there. We don't have that, and that's why I don't think this offense is really that strong in this case. Any other questions? Then I will stand on my leave. Thank you, Counselor. Roberto, please. We're talking about a situation over several years, and I think that's kind of where things get kind of displaced a little bit. It's an undisputed accident. All the treatment, everything is paid for six months. No lost time from work. He stopped going to Dr. Thorpe on his own volition. He lied about the denial of medical treatment. We didn't deny anything. He said he didn't have the injections. He lied about that. And then he just stops treating on his own. He's back to work, and he works months and months, and he works all through 2004. Where in the record is there anything from January of 04 to January of 05 that he's treated for a low back problem related to June of 03 claim? There's nothing in there. He goes in November of 04, 2005 to see the emergency room because of incidents away from work. He's not a poor historian. Every single history he gives to the doctors for the first two or three years of treatment are right on. They're identical. I tried to get out of the way. I jumped out of the way. I moved out of the way. It happened in June of 03. Three years down the road, then you run into, well, now he can't remember the accident dates because he's had three subsequent incidents there away from work, so now he gets fuzzy on the dates of accident. The only inconsistent history on mechanism of accident or what happened in June of 03 is he gets up in front of the arbitrator and says, I was drugged 140 feet. Where in the world did that come from? Well, it came from because now he wants to do surgery on him. He's got to come up with a very strong history of I was really hurt. The problem is the medical doesn't support that. The dissent is right on. There are too many inconsistencies here, and we're being blamed for not paying for the medical. He didn't seek medical treatment because we wouldn't pay. Then how do you incur $25,000 in medical bills if you're claiming that you can't seek medical treatment because we're not paying? We did pay. We paid it under health insurance. That's why we're making the claim for the credit. There was no claim for TTD. The application, as pointed out by Commissioner Lindsey, the application flat out says there are two prior claims. Here are the commission numbers. Counsel told you he represented him in those. Yet there was such a problem getting medical treatment back in 2004. He's represented by an attorney in other cases. Why can't they file an application? Why can't they go ahead and file a petition for immediate hearing? The application is not filed until January 2006, only because then he's back to see his eighth doctor now, Dr. Park, and they've got an opinion from him, surgery. Did anyone see anywhere in this record that any other doctor said you need surgery before he got to Dr. Park in January 2006? I would submit no. That's his eighth doctor. He went there because I don't know why he went there. I just know he went there right after the application was filed or right before the application was filed. But he's not a poor historian. He's a great historian until he gets to arbitration. Why he came up with that, I don't know. The bottom line here is we're really now talking about Dr. Park and the surgery, and we have an opinion that it's not necessary. Dr. Park's opinion is only that he's in, he's got the complaints, surgery is appropriate, but the arbitrator just omitted all of his admissions on cross-examination, and we would submit that when you put all that together, that really casts doubt on his credibility, and for that reason we ask that you reverse the commission. Of course, we'll take the matter under advisement.